O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLADYS MILAN BARAJAS,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 14-5757 RNB<br><br>ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

Plaintiff filed a Complaint herein on July 24, 2014, seeking review of the Commissioner's denial of her application for a period of disability and Disability Insurance Benefits. In accordance with the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt Stip") on May 21, 2015. Thus, this matter now is ready for decision.[1]

---

[1] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).


**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that plaintiff is raising as the grounds for reversal and remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly classified fibromyalgia and depression as non-severe impairments at step two of the sequential evaluation process.

2. Whether the ALJ properly considered the medical opinion evidence relating to fibromyalgia and depression.

3. Whether the ALJ made a proper adverse credibility determination.

4. Whether the ALJ made a proper residual functional capacity ("RFC") determination at step four of the Commissioner's sequential evaluation process.

**DISCUSSION**

As discussed hereafter, the Court concurs with the Commissioner that reversal is not warranted based on the ALJ's failure to classify fibromyalgia as a severe impairment in light of the medical opinion evidence. However, the Court concurs with plaintiff that the ALJ erred in failing to classify depression as a severe impairment in light of the medical opinion evidence and that the ALJ failed to make a proper adverse credibility determination in light of evidence of plaintiff's depression. As a result of the Court's finding with respect to those two issues, it is unnecessary for the Court to reach the issue of whether the ALJ made a proper RFC determination.

**A.** **The ALJ's step two determination in light of the medical opinion evidence (Disputed Issues One and Two)**

Disputed Issues One and Two are directed to the ALJ's failure at step two of

the Commissioner's sequential evaluation process to classify fibromyalgia and depression as severe impairments in light of the medical opinion evidence. (See Jt Stip at 4, 16.)

Step two of the sequential evaluation process requires the ALJ to determine whether an impairment is severe or not severe. See 20 C.F.R. §§ 404.1520(a), 416.920(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, an impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities." See 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." Basic work activities also include mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b); Social Security Ruling ("SSR") 85-28.[2] The Ninth Circuit has described step two as "a de minimis screening device to dispose of groundless claims." See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the

---

[2] Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

Moreover, to reject the uncontradicted opinion of an examining physician, an ALJ must provide "clear and convincing" reasons. Where, as here, the examining physician's opinion is contradicted by that of another doctor, the ALJ must provide "specific and legitimate" reasons that are supported by substantial evidence in the record. See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294,1298-99 (9th Cir. 1999); Lester, 81 F.3d at 830-31; Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

### 1. Fibromyalgia

The ALJ did not classify fibromyalgia as one of plaintiff's severe impairments, in part because she accorded significant weight to the testimony of Dr. Weingarten, a medical expert. (See AR 19.) During the administrative hearing, Dr. Weingarten testified that he was not sure that plaintiff actually had fibromyalgia based on the

1  record, which included a tender point examination which did not reflect the current
2  diagnostic standard for fibromyalgia. (See AR 45-48.) Dr. Weingarten also testified
3  that since plaintiff had multiple other impairments, "I don't really think it makes a
4  difference" what the causes of her limitations were. (See AR 47-48.)

5        Plaintiff contends that the ALJ's non-severity determination with respect to her
6  fibromyalgia was erroneous in light of the opinions of Dr. Silver and Dr. Leoni.

7        Dr. Silver, a treating physician, performed a qualified medical examination in
8  which he stated the following. (See AR 691-730.) Based on an examination and a
9  review of the record, plaintiff had fibromyalgia, as well gastrointestinal complaints,
10 sleep disorder, hypertension, and diabetes mellitus. (See AR 728.) Plaintiff's
11 condition was "permanent and stationary," her pain "appear[ed] to have significantly
12 improved as of today's visit," and she was recommended to undergo further
13 treatment, including visits with a rheumatologist every three months. (See AR 728-
14 29.)

15       To the extent that plaintiff is contending that the ALJ failed to properly
16 consider Dr. Silver's opinion (see Jt Stip at 5, 7, 14, 18, 19), the Court disagrees
17 because plaintiff has not proffered any evidence of work-related limitations that Dr.
18 Silver had attributed to fibromyalgia and that ALJ had failed to consider. Indeed, Dr.
19 Silver's latest opinion reflected that plaintiff had significantly improved. (See AR
20 728.) Dr. Silver's mere diagnosis of fibromyalgia, unaccompanied by an opinion
21 about any specific functional deficits, was insufficient to establish that the impairment
22 was severe. See Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1164-65
23 (9th Cir. 2008) (at step two, ALJ did not err in failing to classify carpal tunnel
24 syndrome as a severe impairment where the medical record did not establish work-
25 related limitations); Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (at step
26 two, a claimant "must show more than the mere presence of a condition or ailment");
27 see generally Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 601 (9th Cir. 1999)
28 (ALJ was not required to credit medical evidence that did not show how a claimant's

symptoms "translate into specific functional deficits which preclude work activity").

Dr. Leoni, a treating physician, issued an opinion in August 2012 stating that, based on fibromyalgia and other impairments, plaintiff should be limited to lifting and carrying less than ten pounds, sitting for a total of one hour in an eight-hour workday, and standing and walking for a total of ten minutes in an eight-hour workday. (See AR 662, 663.)

The ALJ determined that Dr. Leoni's opinion was "deserving of little probative weight" for two reasons. One of the reasons proffered by the ALJ was that Dr. Leoni "offered his opinion more than eight months ago, which casts additional doubt on its reliability as an assessment of the claimant's current condition." (See AR 20.) However, the Court fails to see how the fact that Dr. Leoni issued his opinion in August 2012 rendered it unreliable where (1) much of the relevant medical evidence was issued before or around that date; (2) the plaintiff's initial administrative hearing occurred only one month later, in September 2012 (see AR 58); and (3) the ALJ accorded significant probative weight to a medical opinion issued in October 2011, well before Dr. Leoni issued his opinion (see AR 15; see also AR 536-41 [opinion of Dr. Ritvo]). Under these circumstances, the Court finds that this was not a legally sufficient reason on which the ALJ could properly rely to accord little probative weight to Dr. Leoni's opinion.

However, the other reason proffered by the ALJ was that Dr. Leoni "did not state with specificity which clinical findings, if any, he relied upon in forming his opinion." (See AR 20; see also AR 662-67.) The Court concurs and finds that this was a legally sufficient reason on which the ALJ could properly rely to accord little probative weight to Dr. Leoni's opinion. See, e.g., Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that treating physician's opinion that was "unsupported by rationale

or treatment notes, and offered no objective medical findings" to support diagnoses was properly rejected); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions").

Thus, as to Dr. Leoni, the Court finds that, although the ALJ proffered one legally insufficient reason to accord little weight to his opinion, the error was harmless because the ALJ also proffered another independent, legally sufficient reason supported by substantial evidence. See Howell v. Commissioner Social Sec. Admin., 349 F. App'x 181, 184 (9th Cir. 2009) (now citable for its persuasive value per Ninth Circuit Rule 36-3) (ALJ's erroneous rationale for rejecting treating physician's opinion was harmless because the ALJ otherwise provided legally sufficient reasons to reject opinion) (citing Stout, 454 F.3d at 1054); Donathan v. Astrue, 264 F. App'x 556, 559 (9th Cir. 2008) (ALJ's erroneous characterization of treating physicians' opinions was harmless "because the ALJ provided proper, independent reasons for rejecting these opinions").

In conclusion, the Court finds that the ALJ did not err in declining to classify fibromyalgia as a severe impairment in light of the opinions of Dr. Silver and Dr. Leoni.

2.  Depression

The ALJ accorded significant probative weight to the opinions of Dr. Talei and Dr. Ritvo, examining physicians who both opined that plaintiff's mental impairments caused only mild and slight limitations in mental functioning. (See AR 15; see also AR 536-41, 682-90.) As a result, the ALJ found that plaintiff's depression (and anxiety) did not cause more than a minimal limitation in her ability to perform basic mental impairments and therefore were non-severe impairments. (See AR 15.)

Plaintiff contends that the ALJ's non-severity determination with respect to her depression was erroneous in light of the opinions of Dr. Curtis, Dr. Cook, and Dr.

Windman. The Court agrees.

Dr. Curtis, a treating psychiatrist, issued an opinion in which he stated the following. (See AR 377-403.) Plaintiff's diagnoses included a depressive disorder not otherwise specified with anxiety, defensiveness, and denial; as well as psychiatric factors affecting her medical condition. (See AR 393.) Her condition was "permanent and stationary," with the following limitations: moderate impairments in her activities in daily living and in concentration, persistence, and pace; and marked impairments in social functioning and in "Adaptation (Deterioration or Decompensation in Complex Work-like Settings)." (See AR 396, 397.) These factors "would correlate with an overall marked degree of permanent and mental behavioral impairment significantly impeding useful functioning." (See AR 399.)

Dr. Cook, an examining psychologist, issued an opinion in which she stated the following. (See AR 471-92.) Plaintiff's diagnoses included an adjustment disorder with mixed anxiety and depressed mood, chronic; as well as psychological factors affecting her medical condition. (See AR 486.) Since her last employment, "she is unable to perform any type of work, she has become withdrawn and isolative, and she has worsened in her depression, in her feeling of inadequacy, and she lacks hope for the future." (See AR 491.) Plaintiff's condition was "permanent and stationary," and she had a Global Assessment of Functioning ("GAF") score of 55, which was "a fair and accurate measure of [her] permanent disability."[3] (See AR 490, 491).

Dr. Windman, an examining psychologist, issued an opinion in which she stated the following. (See AR 657-59.) Plaintiff had depression, anxiety, fatigue,

---

[3] A GAF score of 51 through 60 signifies moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.); see also Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

agitation, and social withdrawal.  (See AR 657.)  As a result, she had marked limitations in several areas of mental functioning.  (See AR 657-58.)

The ALJ briefly mentioned Dr. Curtis's and Dr. Cook's opinions (see AR 14), failed to mention Dr. Windman's opinion at all, and failed to proffer any reasons for rejecting any of the three opinions.  To the extent that the ALJ implicitly rejected these three opinions by determining that plaintiff did not have a severe mental impairment, it was incumbent upon the ALJ to provide legally sufficient reasons for doing so.  See Lester, 81 F.3d at 830 (an ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" to reject the opinion of a treating or examining physician, even if contradicted by another physician); see also Hill v. Astrue, 698 F.3d 1153, 1159-60 (9th Cir. 2012) (ALJ erred when he failed to provide examining psychologist's opinion "*any* degree of review at all, and gave no reasons for doing so, let alone any [legally sufficient] reasons") (emphasis in original); Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (with respect to the requirements to provide legally sufficient reasons to reject a treating physician's opinion, "an ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it").

The Court therefore finds that the ALJ erred in her step two determination with respect to plaintiff's depression in light of these medical opinions.  In other words, the Court finds that the medical evidence here did not "clearly establish" a finding of non-severity with respect to plaintiff's depression.  See Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ's non-severity determination at step two was erroneous where medical evidence reflected that claimant's depression rendered his mental abilities "seriously limited," "fair," or "poor"); see also Webb, 433 F.3d at 688 (reversing ALJ's non-severity determination at step two where there was objective evidence of a severe medical impairment); Holzberg v. Astrue, 679 F. Supp. 2d 1249, 1261 (W.D. Wash. 2010) (ALJ erred in finding depression not severe where evidence indicated moderate limitations in several mental functional areas).

## B. The ALJ's adverse credibility determination (Disputed Issue Three)

Disputed Issue Three is directed to the ALJ's adverse credibility determination with respect to plaintiff's subjective symptom testimony. (See Jt Stip at 24.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Plaintiff alleged that she cannot work because of hypertension, anxiety, diabetes, back pain, depression, and fibromyalgia. (See AR 61.) During the administrative hearing, she testified about her limitations and daily activities as follows. She experiences severe pain, she wakes up with severe headaches, and her hands and back hurt. (See AR 64.) In particular, her fibromyalgia causes headaches and pain in her neck, clavicle, chest, knee, buttocks, hips, and calves. (See AR 76.) She has panic attacks at least once per week, and her anxiety prevents her from leaving her house. (See AR 69.) Her panic attacks can occur "out of nowhere" and can last 2-3 hours. (See AR 72.) On a typical day, she wakes up, checks her blood sugar level, takes her medicine, eats a meal, and watches television; and approximately once per week, she takes a fifteen-minute walk. (See AR 69-71.)

The ALJ determined that although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's

statements concerning the intensity, persistence, and limiting effects of these symptoms were "not credible" to the extent they were inconsistent with the ALJ's residual functional capacity ("RFC") assessment. (See AR 17.) In support of this adverse credibility determination, the ALJ proffered three detailed reasons. (See AR 18-19.)

First, the ALJ found that "the objective medical evidence does not support [plaintiff's] allegations." (See AR 18.) Specifically, the ALJ cited evidence reflecting the following: (1) a study of plaintiff's heart that revealed some suppressed autonomic nervous system activity, but otherwise a normal rate and rhythm, with no evidence of ventricular or supraventricular ectopic beats (see AR 447-51); (2) normal EKG studies (see AR 468, 796); (3) imaging studies of the abdomen and pelvis that revealed minor fatty infiltration of the liver, but were otherwise normal (see AR 629, 649); (4) a medical notation that there was no evidence of end-stage organ disease (see AR 651-54, 796), despite plaintiff's history of diabetes mellitus and hypertension; (5) imaging studies of the brain that were normal (see AR 574, 796), casting doubt on plaintiff's allegations of disabling headaches; (6) physical examinations that reflected normal cardiovascular, musculoskeletal, neurological, and respiratory function (see AR 616-17, 622-23, 637, 648-49, 795), despite plaintiff's claims of back pain, headaches, high blood pressure, and weakness; (7) a notation by an attending physician that plaintiff's blood pressure readings, though elevated, were not consistent with her complaints of serious headaches (see AR 633); (8) examination findings that plaintiff's heart, lungs, abdomen, extremities, and tenderness were effectively normal (see AR 696-702); and (9) examination findings that plaintiff had a normal gait, normal heart rate, normal range of motion and motor strength of the spine and extremities, no evidence of abdominal masses or peripheral edema, and a negative straight leg test (see AR 671-72). The ALJ also noted that the record contained no evidence of diagnostic studies of plaintiff's spine or extremities to support her allegations of back pain and peripheral neuropathy. (See AR 18.)

Second, the ALJ found that plaintiff's "course of treatment also does not support her allegations." (See AR 19.) Specifically, the ALJ cited evidence reflecting the following: (1) plaintiff told her treating physician, Dr. Kwon, that she had noticed improvement in her diabetes symptoms and better control of her blood glucose levels with insulin, improved diet, and exercise (see AR 263, 304-11); (2) Dr. Kwon noted that plaintiff's blood glucose levels were under "excellent control" (see AR 305); and (3) plaintiff's other treating physician, Dr. Leoni, noted that plaintiff's blood pressure was improving with Benicar and Bystolic (see AR 780).

Third, the ALJ found that plaintiff "was not always compliant with her treatment providers' recommendations." (See AR 19.) Specifically, the ALJ cited evidence reflecting the following: (1) plaintiff told Dr. Kwon that she was not taking her insulin (see AR 302, 562); (2) plaintiff told another physician that she was not taking her diabetes medication (see AR 622); (3) plaintiff's failure to take her insulin coincided with elevation of her blood glucose levels and worsening of her diabetes-related symptoms (see AR 302, 562, 622); (4) Dr. Kwon noted that plaintiff was not compliant with recommendations regarding her diet, which was largely responsible for the fluctuations in her blood glucose levels (see AR 323, 566); and (5) plaintiff did not require extended hospitalization for her symptoms.

The Court notes that all three of the ALJ's reasons went solely to plaintiff's subjective symptom testimony relating to her physical limitations and that the ALJ ignored and made no findings about plaintiff's subjective symptom testimony relating to her mental limitations, which form a significant part of her disability claim and which, as discussed above, are supported by significant and probative evidence in the record. Under these circumstances, the Court is unable to affirm the ALJ's adverse credibility determination. See Macri v. Chater, 93 F.3d 540, 546 (9th Cir. 1996) (reversing where the ALJ made an adverse credibility determination "without considering significant probative evidence"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (although an ALJ's adverse credibility determination is entitled to

deference, an ALJ cannot seek to justify negative credibility findings by "ignoring competent evidence in the record that suggests an opposite result"); Lester, 81 F.3d at 834 (reversing in part where ALJ gave no reasons for rejecting the claimant's testimony as to his mental limitations); see also Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (an ALJ's adverse credibility determination cannot be based on selective consideration of the evidence).

## CONCLUSION AND ORDER

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at 603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court notes that plaintiff requests only remand for additional administrative proceedings. (See Jt Stip at 34.) Moreover, the Court has concluded that this is not an instance where no useful purpose would be served by further administrative proceedings; rather, additional administrative proceedings still could remedy the defects in the ALJ's decision. See Webb, 433 F.3d at 688 (remanding for additional administrative proceedings where the ALJ failed to make a proper step two determination); Edlund, 253 F.3d at 1160 (same); see also Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1103-07 (9th Cir. 2014) (remanding for additional administrative proceedings where the ALJ failed to make a proper adverse

credibility determination) (discussing cases).

Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.[4]

DATED: June 3, 2015

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[4] It is not the Court's intent to limit the scope of the remand.